In re MARTIN FEIN & CO.,
INC., Debtor.

DOLPH CLOTHIERS, INC., and Dolph's
Haberdashers, Inc., Plaintiffs,

v.

Chester B. SALOMON, Trustee in
Bankruptcy of Martin Fein &
Co., Defendants.

UNITED CREDIT CORPORATION,
Plaintiff,

v.

Chester B. SALOMON, Trustee,
Defendant.

Bankruptcy Nos. 82–B–20514.
Adv. Nos. 83–6104, 82–6307.

United States Bankruptcy Court,
S.D. New York.

Nov. 10, 1983.

Ballon, Stoll & Itzler, New York City, for Dolph Clothiers, Inc., et al.; Ronald S. Itzler, New York City, of counsel.

Chester B. Salomon, P.C., trustee, New York City; Alec P. Ostrow, New York City, of counsel.

Lefrak Fischer & Myerson, New York City, for United Credit Corp.

## DECISION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The disposition of funds by an auctioneer, whose corporation was thrown into bankruptcy by three estates whose funds were squandered, has led to litigation between the trustee in bankruptcy of the corporate auctioneer and various entities for whom the auctioneer conducted sales. In the two cases which are the subject of these motions for summary judgment, the representative of the auctioneer-debtor actually segregated the proceeds from the auction sales and placed them in marked envelopes in the auctioneer's safe, where they were found after his death. The plaintiffs request that

the auctioneer's trustee in bankruptcy should be directed to turn over to them the proceeds from the segregated envelopes.

The trustee in bankruptcy maintains that these funds would have been deposited in the general corporate account of the debtor-auctioneer had he not died when he did and that they were segregated is mere happenstance. Hence, the trustee contends that these proceeds are property of the estate, within the meaning of Code § 541, and that the plaintiffs' entitlement must be governed by the priority and distribution schemes set forth in 11 U.S.C. §§ 507 and 726. The parties in the two adversary proceedings have moved for summary judgment based upon the undisputed facts.

### UNDISPUTED FACTS

1. On August 23, 1982, an involuntary petition under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") was filed against Martin Fein & Co. On the same date, upon the application of the petitioning creditors, an order to show cause was entered why an interim trustee should not be appointed under sections 303(g) and 15303 of the Bankruptcy Code. On August 27, 1982, an order was entered directing the United States Trustee for the Southern District of New York to appoint an interim trustee. The interim trustee has since qualified and is currently acting in that capacity. On September 15, 1982, an order for relief was entered against Martin Fein & Co.

2. Prior to the termination of its business, Martin Fein & Co. operated as a licensed auctioneer, conducting auction sales for, among others, secured parties, assignees for the benefit of creditors, and trustees in bankruptcy in the Southern and Eastern Districts of New York.

3. The sole shareholder of Martin Fein & Co. was Martin Fein, who died on June 21, 1982 after a prolonged illness. Martin Fein, his son, Clifford Fein and George Leontis were the licensed auctioneers employed by Martin Fein & Co.

4. Martin Fein & Co. did not maintain any special or segregated account or accounts for the deposit of proceeds of the auction sales that it conducted. Moreover, Martin Fein & Co.'s agents were instructed to deposit the proceeds of all auction sales in the general corporate account.

5. The plaintiffs in these two adversary proceedings are entities for which Martin Fein & Co. conducted auction sales, but to which it failed to remit the proceeds of such sales. At the time of the termination of its operations, Martin Fein & Co. did not have sufficient funds to pay the net proceeds of such sales to each of the entities for which it had conducted auction sales.

6. Upon learning of the insufficiency of the funds of Martin Fein & Co., the trustees for two debtor estates in the Southern District of New York, the McCordi Corporation, Case No. 82 B 20308 and Euro-Swiss International Corporation, Case Nos. 79 B 10245 and 80 B 10177, obtained orders freezing Martin Fein & Co.'s general corporate account maintained at Citibank, N.A. The trustees also obtained orders directing that the contents of a certain safe deposit box maintained in the name "Lillian Fein, special account" located at the Queens County Savings Bank in Lawrence, be turned over to the clerk of the bankruptcy court. This safe deposit box was alleged to contain the contents from a safe located on the premises of Martin Fein & Co. which were removed by Clifford Fein and George Leontis.

7. In accordance with the court orders, the general corporate account at Citibank was frozen, and the contents of the safe deposit box were inventoried in the presence of counsel for Lillian Fein and various entities which had not received the proceeds of their auction sales.

8. The contents of the safe deposit box were turned over to the clerk of the bankruptcy court, who secured the records and other tangible property and deposited the cash and checks in a special account.

9. Subsequent to his qualification, the trustee of Martin Fein & Co. applied to and obtained from this court an order directing Citibank to turn over the funds in Martin

Fein & Co.'s general account, and directing the clerk of the bankruptcy court to turn over the contents of the safe deposit box. This court's turnover order of November 9, 1982, provided for the trustee of Martin Fein & Co. to hold the funds turned over by the clerk of the bankruptcy court in a special account, but permitted the funds turned over by Citibank to be used for general purposes in the administration of the case. The order additionally directed all parties claiming a constructive trust interest in the proceeds of the Citibank account to commence adversary proceedings by November 22, 1982, or be forever barred. The bar date was extended in certain cases by stipulation and order. There is no contention that the present adversary proceedings were commenced untimely.

10. On or about January 10, 1983, Citibank turned over the sum of $20,994.36, representing the balance in Martin Fein & Co.'s general corporate account. There now exists a balance of $23,009.28 in the estate's general account.

## UNITED CREDIT CORPORATION

### 82 ADV. 6307

11. Prior to July, 1982, United Credit Corporation ("UCC") was a secured creditor of Today's Displays, Inc. ("Today") with a perfected security interest in substantially all of its tangible assets. As a result of Today's default, UCC foreclosed upon its security interest and retained the debtor, a licensed auctioneer, to conduct a public auction of the property on behalf of UCC. On or about July 8, 1982, the auction sale was conducted by George Leontis, an employee of the debtor.

12. Subsequently, UCC requested the debtor to turn over the proceeds of the sale, but the debtor refused. The business of the debtor was then in complete disarray as a result of the death on June 5, 1982 of Martin Fein, the sole stockholder of the debtor.

13. As a result of the debtor's failure to pay the sale proceeds to UCC, on or about July 23, 1982, UCC commenced an action in Supreme Court, New York County, entitled *United Credit Corporation v. Martin Fein &*

*Co., Inc.*, No. 17236/82, by order to show cause. UCC obtained a restraining order, dated July 25, 1982, enjoining the debtor, Lillian Fein, Clifford Fein and George Leontis from taking any action with respect to the proceeds of the auction sale of July 8, 1982.

14. Subsequently, UCC learned from motion papers filed by the trustee of Euro-Swiss International Corporation, a bankrupt estate pending in this district, for whom the debtor also conducted an auction sale, that the contents of a safe located at the premises of the debtor had been removed by Clifford Fein and George Leontis and had been deposited in a safe deposit box in an account called "Lillian Fein, special account." On or about August 5, 1982, the trustee of the Euro-Swiss estate obtained an order from this court directing that the Lillian Fein safe deposit box be opened and that the contents be deposited with the Clerk of the Bankruptcy Court of the Southern District of New York.

15. On or about August 12, 1982, the safe deposit box was opened and an inventory of the contents was prepared jointly by all counsel present, including counsel for UCC. The safe deposit box contained, among other things, the following items totalling $24,997.19:

(a) a brown envelope bearing the notation "Today" containing $4,857.05 in cash, checks made payable to the debtor totalling $11,045.14 and three billing sheets relating to the sale of Today's premises, and

(b) a brown envelope bearing the notation "Today" containing $9,095 in cash.

16. No other property was found in the box bearing the word "Today". The debtor was, however, selling property on behalf of UCC which was obtained by UCC when it foreclosed upon its security interest in all of the tangible assets of Today's Displays, Inc.

## DOLPH'S CLOTHIERS, INC. and DOLPH'S HABERDASHERS, INC.

### 83 ADV. 6104

17. On January 18, 1982, Dolph's Clothiers, Inc. and Dolph's Haberdashers, Inc.

("Dolph's") filed voluntary petitions under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York. At all relevant times, the debtors remained in possession of their property and continued in the management of their business under sections 1101(1) and 1107(a) of the Bankruptcy Code. Thereafter, Martin Fein & Co. was retained by the debtors in possession to conduct the auction sale of the assets of the debtors.

18. On or about July 7, 1982, Martin Fein & Co. conducted the auction sale. As was the case with the sale on behalf of UCC, none of the proceeds of the auction sale were deposited by Martin Fein & Co. in its general corporate account. Instead, cash and checks totalling $6,920.00 on account of the auction sale were found in an envelope bearing the notation "Dolph's: $6,920" among the contents of the "Lillian Fein, special account" safe deposit box. The envelope and its contents were first turned over to the clerk of the court, then to the trustee of Martin Fein & Co., and are currently being held in the trustee's special account.

## DISCUSSION

The plaintiffs in these two actions, UCC and Dolph's, concede that had the auctioneer-debtor commingled the auction proceeds with those of its own they would be relegated to the position of unsecured general creditors of this estate. On the other hand, the trustee in bankruptcy of Martin Fein & Co., Inc. concedes that the debtor "owed a fiduciary duty to each of the plaintiffs and that such duty has been materially breached." Trustee's Memorandum of Law at 6. Notwithstanding these concessions, the plaintiffs contend that since the proceeds from the two auction sales in question were actually segregated and identified, neither the trustee in bankruptcy nor the debtor had any equitable title to the funds and they should be turned over to the plaintiffs. However, the trustee in bankruptcy maintains that no constructive trust should be imposed for the plaintiffs' benefit because

the segregation of moneys does not establish a trust relationship without a requirement that the funds be segregated.

The trustee's position fails to take into account the fact that the plaintiffs need not establish that the debtor-auctioneer, Martin Fein & Co., acted in a trust or fiduciary relationship vis-a-vis the plaintiffs; this status is imposed as a matter of law. Under general common law principles of agency, as applied in New York, an auctioneer who conducts a sale is, by virtue of such employment, primarily the agent of the seller. *In re Premier Container Corp.,* 95 Misc.2d 859, 866, 408 N.Y.S.2d 725, 729 (Sup.Ct.1978). Thus, when the principal's identity is disclosed, the auctioneer is not the proper party to bring suit as agent for the disclosed principal to recover sale proceeds from a defaulting bidder. *Martin Fein & Co., Inc. v. Sealomatic Electronics Corp.,* 57 Misc.2d 187, 190–91, 290 N.Y.S.2d 808, 812 (N.Y.Civ.Ct.1967). Similarly, when an auctioneer fails to turn over purchased items to a successful bidder at an auction, the bidder must sue the disclosed principal and not the auctioneer. *Dulman v. Martin Fein & Co., Inc.,* 66 A.D.2d 809, 809–10, 411 N.Y.S.2d 358, 360 (1978). An auctioneer is under a duty to turn over the proceeds of a sale to the principal and to account for them in full. *See In re John C. Creveling & Son Corp.,* 259 A.D. 351, 352–53, 19 N.Y.S.2d 378, 379, *reargument denied,* 259 A.D. 914, 20 N.Y.S.2d 670 (App.Div.), *aff'd,* 283 N.Y. 760, 28 N.E.2d 975 (1940). If the auctioneer is sued by the principal for the auction proceeds, the auctioneer is estopped from disputing the principal's title. *Plummer v. Bankers Surety Co.,* 52 Misc. 97, 98, 101 N.Y.S. 529, 530 (N.Y.App.Term 1906); 7 N.Y.Jur.2d *Auctions and Auctioneers* § 32 at 184–85 (1980).

The trustee in bankruptcy asserts that there is no requirement that an auctioneer segregate the proceeds from an auction sale. This point may be correct as a matter of custom or usage in the trade, but it does not detract from the fact that the auctioneer, as an agent for the principal, does not have title to the principal's goods. General-

ly, an agent should not commingle the principal's goods with the agent's own property. Thus, § 398 Restatement (Second) of Agency provides:

> § 398. Confusing or Appearing to Own Principal's Things.
>
> Unless otherwise agreed, an agent receiving or holding things on behalf of the principal is subject to a duty to the principal not to receive or deal with them so that they will appear to be his own, and not to mingle them with his own things as to destroy their identity.

Comment c. in § 398 of the Restatement (Second) of Agency indicates that commingling may be allowed in certain cases, such as those involving auctioneers. This point is stated in pertinent part as follows:

> c. *Effect of custom; fungibles.* In the case of certain professional agents, such as auctioneers and factors, it is customary, and hence ordinarily understood, that the agent can properly mingle his funds with those of his principal. The business expediency of so doing is especially clear where the amounts received by the agent are small or where there is a series of transactions, in which cases it is usually inconvenient for the agent to keep the fund separate either in specie or by a separate account in a bank.

In the instant case, the proceeds from the auctions conducted by the debtor for the plaintiffs were not commingled with the debtor's funds; they were clearly segregated, identified and they created no tracing problem. The trustee in bankruptcy, standing in the shoes of the debtor, may not deny the plaintiffs' entitlement to these proceeds. As was stated in *Elliott v. Bumb,* 356 F.2d 749, 754 (9th Cir.), *cert. denied,* 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966):

> Furthermore, even had there been no written agreement, the relationship of Security and Van's as principal and agent would seem to have required the impressing of a constructive trust upon funds received by the agent from the sale of his principal's property and retained by the agent in segregated identity. (citations omitted) Therefore, as to the $2,014.99,

in existence and clearly identified, the trustee of Security's estate is entitled to the fund.

### CONCLUSIONS OF LAW

1. The plaintiffs are entitled to a return of the auction proceeds that were segregated by the debtor and identified by the plaintiffs as not having been commingled with the debtor's funds.

2. The plaintiffs are entitled to summary judgments directing the trustee in bankruptcy of this debtor to turn over such proceeds to the plaintiffs as sought in their complaints.

SUBMIT ORDER on notice.