**In re MARTIN FEIN & CO., INC., Debtor.**

**Harry Robert VARON, Trustee of Euro-Swiss International Corporation, Plaintiff,**

**v.**

**Chester B. SALOMON, Interim Trustee of Martin Fein & Co., Inc., Defendant.**

**Bankruptcy No. 82 B 20514.**
**Adv. No. 82 ADV. 6326.**

United States Bankruptcy Court, S.D. New York.

Oct. 24, 1984.

Chester B. Salomon, P.C., New York City, for trustee; Rita D. Dumain, New York City, of counsel.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for Euro-Swiss; Josephine G. Bachmann, New York City, of counsel.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee of Euro-Swiss International Corp. ("Euro-Swiss"), a Chapter 7 debtor in a bankruptcy case pending in this district, seeks to impress a constructive trust upon funds in a bank account maintained by Martin Fein & Co., Inc. ("Martin Fein"), a Chapter 7 debtor in this court, who conducted a sale as auctioneer for the Euro-Swiss trustee and did not remit or account for the net proceeds of that sale. The Euro-Swiss trustee argues that Martin Fein's employment as auctioneer established a trust relationship between the parties with the result that a lien on the proceeds of the auction sale was created as a matter of law. The Euro-Swiss trustee makes this claim notwithstanding that these proceeds have been commingled with

other funds deposited into Martin Fein's general corporate account at Citibank.

The trustee of Martin Fein objects to a constructive trust being impressed on funds in the Citibank account as contrary to the Bankruptcy Code's theme of equality of distribution to creditors. The Martin Fein trustee contends that Euro-Swiss is unable to trace the proceeds derived from the auction sale and is not entitled to more favorable treatment than general unsecured creditors of the estate, many of whose claims similarly arose from sales conducted by Martin Fein.

## UNDISPUTED FACTS

Euro-Swiss International Corp. is a Chapter 7 debtor in the Bankruptcy Court for the Southern District of New York. In the course of liquidating the assets of Euro-Swiss, Martin Fein & Co., Inc. was employed by the Euro-Swiss trustee to conduct an auction sale of certain personal property. On June 17, 1982, Martin Fein conducted the auction pursuant to court order and received approximately $4,662.50 from the sale. Following the sale, Martin Fein neither filed a Report of Sale with the court nor remitted to the Euro-Swiss trustee the net proceeds of the sale. Instead, Martin Fein deposited the proceeds into its general corporate account maintained at Citibank. No special or segregated account was kept for the deposit of auction receipts.

Subsequent to this auction sale of the Euro-Swiss assets, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against Martin Fein. An order for relief was entered on August 27, 1982. The filing of the involuntary petition was caused in part by Martin Fein's failure to account to other secured creditors, assignees for the benefit of creditors and bankruptcy trustees for whom it conducted auction sales. At the time Martin Fein terminated its operations, there were insufficient funds available to pay the net proceeds of sale to these various principals who previously employed the auctioneer.

Once the insufficiency of Martin Fein's assets became apparent, a race ensued between the persons and entities who had employed the auctioneer as each attempted to recover what were claimed to be the funds derived from the various auction sales. This proceeding and several others that have been commenced present the problem of distributing a fund incapable of satisfying all the claims in full.

Initially, the trustee for Euro-Swiss and another bankruptcy trustee with a similar claim obtained orders freezing Martin Fein's general corporate account at Citibank.[1] Upon application by the trustee of Martin Fein, this court issued an order, dated November 9, 1982, directing Citibank to turn over the previously frozen funds in the general corporate account to the trustee. A restriction was imposed on the trustee's use of the funds to general purposes in the administration of the case. Entry of the order was without prejudice to any claimant who wished to assert the right to a constructive trust upon the fund. The order set a bar date of November 22, 1982 for such claims.

Six adversary proceedings were timely commenced, each seeking to impress a constructive trust on the fund of $20,994.36 released by Citibank.[2] Of the six plaintiffs, only the Euro-Swiss trustee has pur-

---

**1.** Another order was entered in this case directing the turnover of the contents of a safe deposit box kept at the Queens County Savings Bank in the name of "Lillian Fein, special account." This safe deposit box was alleged to contain the contents of a safe located on the premises of Martin Fein. The opening of the safe deposit box uncovered two envelopes designated "Today" containing, among other things, cash in the sum of $13,952.05 and one marked "Dolph's: $6,920" with cash and checks totalling that amount. This court ruled that these funds were

sufficiently segregated and identified to support the claims for constructive trusts asserted by the plaintiffs in *Dolph Clothiers, Inc. v. Salomon (In re Martin Fein & Co., Inc.)*, 34 B.R. 333, 337 (Bkrtcy.S.D.N.Y.1983).

**2.** Two other adversary proceedings were instituted against segregated auction proceeds which this court held were subject to constructive trusts as traced to particular sales. *See supra* note 1.

sued its action for a constructive trust to this stage. The Euro-Swiss complaint seeks to impose a trust of $4,662.50 [3] against a fund in the amount of $23,009.28 which includes earned interest.

## DISCUSSION

■ Code section 541(a)(1) defines the bankruptcy estate as "comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property in which the debtor holds "only legal title and not an equitable interest," 11 U.S.C. § 541(d), however, is beyond the pale of the estate. Thus, where the debtor's interest in property consists only of bare legal title to a constructive trust, lacking any equitable interest in the trust res, the estate acquires nothing more than bare legal title. *See, e.g., In re Wyatt*, 6 B.R. 947, 953 (Bkrtcy.E.D.N.Y.1980). The relationship of the trustee and beneficiary of a constructive trust vis-a-vis the bankruptcy estate has been described succinctly by the Eighth Circuit Court of Appeals.

[W]here, under state law, the debtor's fraud or other wrongful conduct gives rise to a constructive trust, so that the debtor holds only bare legal title to the property, subject to a duty to reconvey it to the rightful owner, the estate will generally hold the property subject to the same restrictions. *E.g., In re Shepard*, 29 B.R. 928, 931–32 (Bkrtcy.M.D. Fla.1983); 4 *Collier on Bankruptcy* ¶ 541.13 (15th ed. 1983).

*In re Flight Transportation Corporation Securities Litigation*, 730 F.2d 1128, 1136 (8th Cir.1984).

■ This court has previously ruled that a trust relationship between Martin Fein, as auctioneer, and the principals for whom it has conducted sales, is imposed as a matter of law. *See Dolph Clothiers, Inc. v. Salomon (In re Martin Fein & Co.,*

*Inc.),* 34 B.R. 333, 336 (Bkrtcy.S.D.N.Y. 1983). General common law principles of agency, as they apply in New York, establish the auctioneer as an agent of the seller by virtue of such employment. *In re Premier Container Corp.,* 95 Misc.2d 859, 866, 408 N.Y.S.2d 725, 729 (Sup.Ct.1978). The principal and agent relationship requires the impression of a constructive trust upon funds received by an agent from the sale of his principal's property which are retained in segregated identity. *Elliott v. Bumb,* 356 F.2d 749, 754 (9th Cir.), *cert. denied,* 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966).

■ Despite the existence of a constructive trust relationship, the doctrine of tracing nevertheless requires the trust beneficiary to identify clearly the trust res as the wrongfully withheld property or the proceeds of such property. The tracing problem is explained in Collier on Bankruptcy in the following terms:

Where the property involved, or its proceeds, has been intermingled with other goods or funds of the debtor's [sic], the owner must definitely trace that which he claims as contained in the assets of the estate. It is not enough to show generally that the property or the money representing sales of the property was added to the debtor's assets at the time of acquisition. The goods sought to be recovered must be definitely traced into the property of the estate, or the proceeds thereof must be traced to a particular fund or to specific property in which it was invested. Upon failure to do this, the bailor, principal, or consignor becomes only a general creditor with the same rights appertaining to other general creditors.

4 Collier on Bankruptcy ¶ 541.08, at 541–45 to 46 (15th ed. L. King 1984) (footnotes omitted).

---

**3.** There is some dispute as to the amount owed to the Euro-Swiss estate. The Euro-Swiss trustee's claim of $4,662.50 exceeds the sum that Martin Fein concedes to be owed, $2,704.04, reflecting a deduction for commissions of ten percent and expenses of sale. The discrepancy between these figures does not affect the disposition of this summary judgment motion as it does not bear on whether grounds exist for the imposition of a constructive trust and a finding of sufficient tracing as a matter of law.

In this adversary proceeding, the Euro-Swiss trustee argues that there is no tracing question impeding his trust claim because the proceeds of sale were concededly deposited into Martin Fein's Citibank account.[4] This account was a general corporate account into which proceeds of various auction sales, among other things, were deposited. No other facts identifying the funds are before the court. The Martin Fein trustee has moved for summary judgment dismissing the complaint because the funds sought to be impressed with a trust have been commingled with the general assets of the estate and cannot be traced as the proceeds of sale as a matter of law. The issue presented is whether proceeds subject to a trust are incapable of being traced as a matter of law if they are commingled with other funds in a general bank account.

The Euro-Swiss trustee relies upon *In re Anjopa Paper & Board Manufacturing Co.*, 269 F.Supp. 241 (S.D.N.Y.1967), to support the claim that he has adequately traced the funds sought to be impressed with a constructive trust. In *Anjopa*, an action by the bankruptcy trustee to set aside an allegedly preferential mortgage was defended by the FDIC, the mortgagee, on the basis that the mortgage merely confirmed a preexisting constructive trust on the property. The trust was said to arise as a result of the debtor having obtained secretly a substantial amount of capital from the bank within the FDIC's receivership, which was found to be a criminal misappropriation of national bank funds. The fraud did not consist of stealing cash, but rather of falsely crediting the bankrupt's account at the bank. The credit balance of the account consisted of the bankrupt's funds as well as the fraudulent credits to the account, thereby establishing a commingling of funds. The district court upheld the FDIC's trust claim despite the commingling of funds in the account, stating:

The equitable lien which attaches to Bank funds is not necessarily defeated by its commingling with [the bankrupt's] other funds. As the Court said in *Estate of Liebman*, 189 Misc. 282, 60 N.Y.S.2d 482, 484 (Surr.Ct.1945):

It is a principle well established that the mere fact that a claimant's money is mingled with money of the wrongdoer does not preclude the claimant from tracing his money into the mingled fund and enforcing an equitable lien upon it. Where a person who is a conscious wrongdoer mingles money of the claimant with money of his own and thereafter withdraws and dissipates a part of the mingled fund, the claimant is entitled to enforce an equitable lien upon the part of the fund which remains. Where the wrongdoer is insolvent, the claimant is entitled to priority over the general creditors of the wrongdoer in collecting his claim out of the balance of the fund. [4] Scott on Trusts, vol. 3, §§ 515, 517; Restatement of the Law on Restitution, Chap. 13, §§ 209, 210 and 211.

*In re Anjopa Paper & Manufacturing Co.*, 269 F.Supp. at 261. Other cases in this circuit support the proposition that tracing is not defeated by the commingling of money with other funds of the debtor. In *Salisbury Inv. Co. v. Irving Trust Co. (In re United Cigar Stores Co. of America)*, 70 F.2d 313 (2d Cir.1934), the court of appeals stated: "If a trustee mingles the trust funds with the mass of his other funds, as long as there remains on hand a sufficient sum to cover the amount of the trust fund, the cestui que trust may follow the trust fund and reclaim it." *Id.* at 316 (citation omitted). *See In re Warner-Quinlan Co.*, 86 F.2d 103, 105 (2d Cir.1936) (dictum); *Malone v. Gimpel*, 151 F.Supp. 549, 554 (N.D.N.Y.1956), *aff'd*, 244 F.2d 954 (2d Cir.1957) (mem.). This point was recently stated in *In re Country Junction, Inc.*, 41 B.R. 425, 432 (W.D.Tex.1984) as follows:

**4.** The Martin Fein trustee concedes that the proceeds of the Euro-Swiss sale were placed in the Citibank general corporate account in his state-

ment (para. 5) submitted under Rule 3(g) of the Civil Rules for the Southern District of New York.

But even when tracing to specific trust funds is impossible because the trustee has commingled the trust funds with other funds, the right is not necessarily defeated if the beneficiary can trace to the commingled fund. *Logan v. Logan,* 138 Tex. 40, 156 S.W.2d 507 (1941). If the commingling of the funds was wrongful, the burden is on the trustee to distinguish his funds from the trust funds ....

The reason for preserving a trust fund claimant's rights in spite of the commingling of the trust res with general funds is explained in Scott on Trusts as follows:

There is no reason why any person whose money has been wrongfully taken by another and mingled with his own should not be entitled to a charge upon the mingled fund .... The fact that money has no earmark is a good reason why the claimant cannot insist that any particular part of the mingled fund is his; but it is no reason why he should be denied an interest in the fund, no reason why he should be relegated to a mere personal claim against the wrongdoer .... It is the wrongdoer's own fault that he cannot identify his own contribution. Therefore, to make reparation he should use, and a court of equity will compel him to use, so far as necessary, the fund which is made up in part of the money of the claimant. In other words, the claimant has an equitable lien or charge on the whole fund. The creditors of the wrongdoer cannot object to this. Since they are not purchasers for value, they stand no better than their debtor. The claimant's lien is therefore available against the general creditors of the debtor.

5 Scott on Trusts § 515, at 3610–11 (3d ed. 1967) (footnote omitted).

■ The foregoing authorities clearly demonstrate that a trust fund claim against a bank account into which the wrongfully withheld trust funds were deposited is to be sustained notwithstanding the intermingling of the trust funds with other money of the debtor. *Elliott v.*

*Bumb,* 356 F.2d 749 (9th Cir.), *cert. denied,* 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966), a case upon which the Martin Fein trustee relies, is inapposite. *Elliott v. Bumb* involved an agency relationship similar to that between the parties to the instant case. When the agent failed to account to the principal for entrusted funds, which were commingled with other money of the agent, the principal attempted to impose an equitable lien on funds within the agent's bankruptcy estate. The issue confronting the court was whether to uphold, in the bankruptcy setting, a California statute dispensing with the tracing requirement ordinarily imposed on the potential trust beneficiary. The ninth circuit rejected the California statute as contrary to the distribution scheme of federal bankruptcy law. No evidence was presented that the trust funds could be traced to a particular account, nor did the court preclude the beneficiary from later demonstrating an ability to trace. Indeed, the court recognized the possibility of tracing despite a commingling of funds as it stated:

We hold that the provisions of section 12300.3 of the California Financial Code, insofar as they would establish a trust on the commingled funds, are in such conflict with the federal bankruptcy scheme that they cannot be given effect in the case at bar. *The case is remanded so as to afford to appellee the opportunity to attempt to trace the sources of the commingled funds.*

*Elliott v. Bumb,* 356 F.2d at 755 (emphasis added).

■ In view of this court's prior determination that a trust relationship exists between Martin Fein and its principals, and a satisfactory demonstration having been made by the plaintiff in the case that the proceeds of the Euro-Swiss sale are traceable to the Citibank general corporate account, the motion for summary judgment by Martin Fein's trustee is denied. Additionally, leave is hereby granted to the other five plaintiffs whose timely filed trust claims were previously dismissed, to restore their complaints within thirty days

from the entry of the order in this case to assert whatever interest they may have in the Citibank account.

SETTLE ORDER ON NOTICE.[5]

---

**5.** An action to impose a constructive trust is not a related proceeding which would require entry of an order by the district court. *Salomon v.* *Kaiser (In re Kaiser),* 722 F.2d 1574, 1582 (2d Cir.1983).