EDWARD BENDER AND SONS, A PARTNERSHIP, APPELLANT, V. ERICSON LIVESTOCK COMMISSION COMPANY, INCORPORATED, A NEBRASKA CORPORATION, APPELLEE.

421 N.W.2d 766

Filed April 8, 1988.   No. 86-182.

158

George H. Moyer, Jr., of Moyer, Moyer, Egley & Fullner, for appellant.

Charles R. Maser, for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BURKHARD, D.J.

SHANAHAN, J.

Edwin Bender and Sons, a partnership (Bender), sued Ericson Livestock Commission Company, Incorporated, concerning the condition of consigned cattle sold by auction at that sale barn. From a directed verdict for Ericson, Bender appeals. We reverse and remand for a new trial.

Edwin Bender, a farmer-livestock feeder with more than 30 years' experience, was a partner with his sons in the cattle feeding business. By mail, Edwin received a notice of the "Fancy Sandhill Cattle Auction" to be conducted by Ericson at its sale barn on August 28, 1982. The prospective auction at Ericson's barn included sales of heifers, such as 300 head consigned by Dan Morgan and which, according to the sale advertisement or notice, were "Gtd open," that is, guaranteed open. An open heifer is not pregnant. To a feedlot operator, pregnant heifers are undesirable as feeder cattle. Obviously, in a cattle feeding operation, the objective is to convert feed into weight-gain in a feedlot heifer. However, if the heifer is pregnant, the feed becomes prenatal nutriment for the pregnant heifer and, in turn, for her unborn calf. Consequently, some of the feed's cost goes unrecovered in the form of the calf, which has little value in an operation intended to finish cattle for market within 5 to 6 months after purchase for the feedlot. On termination of pregnancy, by birth or abortion, a heifer suffers stress, resulting in loss of appetite and weight loss. A pregnant heifer, which has gained weight for market, may have difficulty in giving birth to her calf, another stressful situation, or even die during a birth complicated by her fattened condition. Someone, either the feedlot operator or a veterinarian, may have to assist in the calf's birth by use of a calf-puller, a device to manually extract or "pull" the calf from the pregnant heifer.

Edwin Bender and his wife, Angeline, with their son Tim and

his future wife, attended Ericson's August 28 sale. In Ericson's barn, immediately above the gate through which cattle entered the sale ring, was a sign: "All Guarantees Between Buyer and Seller." On behalf of the partnership, Edwin bought 100 head of Morgan heifers and was interested in a further purchase of approximately 100 head of steers. While Benders were waiting for steers to be brought into the ring, a "bunch of heifers" entered the ring. Heifers were selling for about $6 to $7 per head less than steers. Prompted by the heifer price, Edwin Bender "stopped the auctioneer to verify that they [the heifers] were open." Prior to the auction, Ericson had not disseminated any information or made any representation concerning the heifers. Edwin "stood up and hollered at the auctioneer, 'Are these heifers guaranteed open?' " The auctioneer responded: "Yes, absolutely, there is an affidavit in the office." Relying on the auctioneer's response, Edwin bid on and bought the heifers. Without the auctioneer's representation of the heifers' condition, Bender would not have bought the cattle.

When Edwin went to Ericson's office to pay for the heifers purchased at auction, he gave his check for the cattle and received an unsworn document:

Heifer Guarantee Contract

I, Vernon Moody, on this 28 day of Aug, 1982, do hereby guarantee 136 head of heifers open. If any of said heifers are found to be with calf, I will refund three (3) dollars per hundred on the purchase price and will pay this refund on the purchase weight of said heifers, sold through Ericson Livestock Commission Co., Inc., Ericson, Nebraska, and purchased by Ed Bender, Address Humphrey Ne.

Proof that heifers were with calf at time of sale must be in the form of a notarized certificate by a licensed veterinarian and must be brought to my attention within a period of 90 days from purchase date. Said heifers must be identified by brand and held ten days to permit inspection by seller.

Brand J3 LH

Signed /s/ Vernon D. Moody

All Guarantees Are Between Consigner and Buyer

Shortly after their arrival at the Bender feedlot, the heifers were put on full feed. In February 1983, Edwin noticed that the Moody heifers "started [to] bloom," "were calfy . . . with calf," and manifested other recognized signs of bovine pregnancy. On February 19, Angeline Bender called the Ericson sale barn, told barn personnel that the Moody heifers were pregnant, and was instructed by the Ericson barn to contact the seller, Moody. Thereafter, the heifers in question started to calve. Many of the heifers experienced difficulty in giving birth, necessitating assistance and attendance by a veterinarian. Some heifers and calves died. Later, when Bender sold the heifers, the sale price was between $2 and $3 per hundredweight less than would have ordinarily been obtained because the heifers had had calves or were pregnant. Therefore, in connection with the pregnant heifers purchased at the Ericson sale barn, Bender contracted veterinarian expenses, received a reduced price on sale of the heifers, and incurred time and expense which would not have been otherwise required if the heifers had been open when purchased by Bender.

In its petition, Bender alleged that, when it purchased the cattle in question, Ericson expressly warranted that the Moody heifers were open, whereas the heifers were pregnant, and that Ericson misrepresented the pregnant heifers as open, which resulted in Bender's eventual damages. Ericson denied any misrepresentation and also alleged that it had made no "warranties" except those authorized by the consignor, Moody, and that, in accordance with a prevailing "custom and practice" in the area, "auction barns and livestock commission companies . . . never undertake to guarantee the animals sold in any manner whatsoever, including that heifers are open." Further, Ericson alleged that Bender received "a heifer guarantee contract" from the seller, Moody, and that all guarantees were between the "consignor and buyer."

In light of the evidence, set forth above, Ericson moved for a directed verdict at the conclusion of Bender's case. The district court concluded:

> The Plaintiff [Bender] bought the cattle subject to an "affidavit in the office". This affidavit was in fact a heifer guarantee contract, which was delivered to the Plaintiff at

the time they paid for the cattle. The Plaintiff knew they had received the contract, accepted the same and are bound by the terms of the contract. In other words, they received what the auctioneer told them they would receive, and they accepted it.

Therefore, there being no question of fact for the jury to decide, the Defendant is entitled to the directed verdict as a matter of law.

Accordingly, the court directed a verdict in favor of Ericson.

Among its assignments of error, Bender contends that the district court committed reversible error in sustaining Ericson's motion for the directed verdict.

As we construe Bender's petition, the cause of action is based on Ericson's statement as an express warranty and a misrepresentation of a material fact. "Under the code system of pleading it is not necessary to state a cause of action or a defense in any particular form. It is only necessary to plead the facts, not the theory of recovery." *Waite v. Samson Dev. Co.*, 217 Neb. 403, 407, 348 N.W.2d 883, 886 (1984). See, also, *Moore v. Puget Sound Plywood*, 214 Neb. 14, 332 N.W.2d 212 (1983).

A warranty is an assurance, such as a positive statement, that a subject factually exists as declared, asserted, promised, represented, or affirmed. See, *Long v. Carpenter*, 154 Neb. 862, 50 N.W.2d 67 (1951); *McGuire v. Thompson*, 152 Neb. 28, 40 N.W.2d 237 (1949). Misrepresentation is a manifestation, by word or conduct, which constitutes an assertion not in accordance with fact. See, *Caruso v. Moy*, 164 Neb. 68, 81 N.W.2d 826 (1957); *Pasko v. Trela*, 153 Neb. 759, 46 N.W.2d 139 (1951). A misrepresentation and a warranty are not necessarily mutually exclusive and may arise from the same representation on which a cause of action is based. See *Mary Pickford Co. v. Bayly Bros., Inc.*, 12 Cal. 2d 501, 86 P.2d 102 (1939). "A party against whom a motion to dismiss is directed is entitled to have all such party's relevant evidence accepted or treated as true, every controverted fact as favorably resolved, and every beneficial inference reasonably deducible from the evidence." *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 449, 412 N.W.2d 56, 73-74 (1987).

A court cannot decide an issue as a matter of law unless the

facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom. See *Rahmig v. Mosley Machinery Co., supra.* "Thus, in a jury trial, when evidence compels but one reasonable conclusion regarding an issue or question in the litigation, a court may properly direct a verdict on such issue or question." *Rahmig v. Mosley Machinery Co., supra* at 449, 412 N.W.2d at 74.

> When a trial court sustains a motion to dismiss at the close of a plaintiff's case in chief, the Supreme Court must treat as admitted the truth of all relevant evidence favorable to the plaintiff and must give the plaintiff the benefit of all permissible inferences deducible from the properly admitted evidence to determine whether a prima facie case has been established.

*Gordman Properties Co. v. Board of Equal.*, 225 Neb. 169, 177, 403 N.W.2d 366, 371-72 (1987).

Bender's claim has two important aspects: the type of sale at which Bender purchased the cattle, and Ericson's role in making the statement or representation concerning the condition of the heifers.

Bender bought the heifers in a sale by auction, which was complete with the "fall of the hammer" at the sale ring. See Neb. U.C.C. § 2-328 (Reissue 1980) (sale by auction). Therefore, if sale of the Moody heifers was complete at the fall of the auctioneer's hammer, whether Ericson's representation induced Bender to purchase the cattle must be determined from the facts preceding the hammer's fall, which completed the auction sale. The district court concluded that Bender's bid was induced by the "Heifer Guarantee Contract" in Ericson's office, a document delivered to Bender on payment for the auctioned heifers. We cannot agree with the district court's conclusion and most assuredly disagree that Benders "received what the auctioneer told them they would receive." The Bender bid was an induced response to the auctioneer's representation that the heifers were not pregnant. Without that representation, Bender would not have bought the heifers. The evidence establishes that the auctioneer's positive assurance and categorical representation concerning the heifers' "open" condition caused the "fall of the hammer," not the auctioneer's

mention of some document with unspecified contents. What the auctioneer represented as the heifers' condition and what Bender received as the result of the sale induced by the auctioneer's representation are two different and diametrically opposed facts. Having determined the nature of the sale and the inducement to Bender for purchase of the heifers, we examine Ericson's role regarding its statement or representation concerning the heifers' condition. "An auctioneer, in selling property for another at auction, is the agent of the seller, and his rights and liabilities, in the absence of an applicable statute changing them, are governed by the general principles of the law of agency." 7 Am. Jur. 2d *Auctions and Auctioneers* § 60 at 412 (1980).

There is no doubt that Edwin Bender realized that Ericson, in conducting the auction, was acting as an agent in the sale of the Moody heifers, although the identity of the seller was not known by Bender before the sale. From the sign at the sale ring, "All Guarantees Between Buyer and Seller," one might reasonably infer that Ericson unambiguously disclaimed any involvement in effecting "guarantees" concerning auctioned cattle and might further infer Ericson's acknowledgment that any "guarantees," as representations of the condition of auctioned cattle, were not part of Ericson's activity in conducting an auction for sale of consigned cattle. On the basis of those inferences from the sign's wording, the necessary conclusion would be that Ericson, as agent for the sale, did not have authority to make any "guarantees" or representations concerning cattle auctioned in the sale ring.

In *Suzuki v. Gateway Realty*, 207 Neb. 562, 299 N.W.2d 762 (1980), this court reviewed a buyer's cause of action against a realtor, based on the realtor's express warranties concerning the construction and fitness of the house purchased by Suzukis, and stated:

> It is generally recognized that "[a]s a general rule, where an obligation is that of a principal, a court cannot enforce the obligation against the agent as long as he is merely acting as agent." 3 C.J.S. *Agency* § 361 (1973). . . .
>
> However, an agent can be held liable if he makes some representation or performs some act on his own

responsibility without authorization from his principal. See 3 C.J.S. *Agency* § 362 (1973). But "[t]his rule is intended to apply only where the unauthorized act of the agent leaves the third party with no claim against the principal, who is not bound by the transaction . . . ." *Id.*

The express warranties alleged and evidence presented do not place Gateway in excess of the authority of the agency and, therefore, the granting of summary judgment for Gateway on Suzukis' third cause of action [warranties] was proper.

207 Neb. at 566-67, 299 N.W.2d at 766.

If Ericson's representation about the heifers' condition was made outside its authority in the auction or without authorization from Moody, Ericson, acting on its own rather than as agent for a principal, may be liable as the result of its warranty that the heifers were "open." The postauction "Heifer Guarantee Contract," which in essence is a limitation of damages recoverable from Moody, is a sorry substitute for the auctioneer's categorical representation or warranty just before the hammer fell to complete the auction sale of the Moody heifers. Bender is left with no claim based on an unrestricted warranty against the heifers' pregnancy—which induced Bender's purchase of the cattle, unless Ericson may be accountable for the "open" warranty without Moody's authorization. Under present Nebraska law, *Suzuki v. Gateway Realty, supra*, the evidence adduced in Bender's case presented questions of fact for the jury.

Even if one were to conclude that the sign's wording, "All Guarantees Between Buyer and Seller," does not negate Ericson's authority to make any warranty concerning the heifers' condition, there remains the issue concerning Ericson's fraud by misrepresentation of a material fact.

To recover in an action for fraud based on a misrepresentation of fact, a plaintiff must prove that (1) the defendant made a representation of a material fact; (2) the representation was false; (3) the representation, when made, was known to be false or was made recklessly as a positive assertion without knowledge concerning the truth of the representation; (4) the representation was made with the

intention that the plaintiff would rely on it; (5) the plaintiff reasonably relied on the representation; and (6) as the result of such reliance, the plaintiff suffered damage. *Alliance Nat. Bank v. State Surety Co.,* 223 Neb. 403, 390 N.W.2d 487 (1986).

*Willard v. Key,* 83 Neb. 850, 120 N.W. 419 (1909), involved a misrepresentation in the sale of land. Key owned the land. Carrig was Key's agent for the sale to Willard. In negotiations for the sale, Carrig stated that the tract contained 352 acres, whereas, in fact, there were 335 acres in the parcel to be sold. Carrig did not know the number of acres in the subject tract, but relied on information received from Key. When the shortage of acres was discovered after purchase of the land, Willard sued Carrig and Key. Summons was served on Carrig in Platte County, where he resided, and on Key in Merrick County, where he resided. From a judgment for Willard, Key appealed and contended that he could not be compelled to defend the fraud action in Platte County because Carrig, although a Platte County resident, was not a proper defendant joined with Key in the action. In finding that the district court for Platte County had jurisdiction over the parties and affirming the judgment for Willard, this court expressed:

> Carrig was made a party and properly served in Platte County, and, if plaintiff was not entitled to recover against him, the judgment against the appellant must be set aside for the want of jurisdiction, without regard to the merits of the case. The question therefore is: Did the ignorance of Carrig as to the number of acres in the tract of land, which he was selling for his codefendant, excuse him from liability to the plaintiff? The evidence shows that he told the plaintiff that there were 352 acres, by a positive statement of the fact, and without communicating to the plaintiff that his only source of information was the appellant. Relying upon this and like statements of the appellant, the plaintiff purchased the land in controversy.
> We are of the opinion that Carrig's ignorance of the untruthfulness of his representations does not excuse him from liability. In *Phillips v. Jones,* 12 Neb. 213, it is said: "And if a party, without knowing whether his statements are true or not, makes an assertion as to any particular

matter upon which the other party has relied, the party defrauded in a proper case will be entitled to relief." The principle there announced has been adhered to by this court in every case where that question has been before it. 83 Neb. at 851-52, 120 N.W. at 419.

Thus, as recognized in *Willard v. Key, supra*, an agent may be liable for the agent's fraudulent conduct, such as a misrepresentation of a material fact, during a transaction on behalf of the principal. Cf. *Morfeld v. Bernstrauch*, 216 Neb. 234, 239, 343 N.W.2d 880, 883 (1984): " 'An agent is personally liable to third persons for [the agent's] misfeasances and positive wrongs. . . .' " (Quoting from *Kuchar v. Bernstrauch*, 192 Neb. 225, 219 N.W.2d 764 (1974).)

Bender's evidence showed that (1) Ericson represented the heifers to be open, a material fact inducing Bender's eventual bid and purchase of the heifers; (2) the heifers were pregnant; (3) without knowledge concerning the truth of its representation, Ericson represented that the heifers were open; (4) Ericson intended that Bender would rely on the heifers' represented condition as an inducement to bid on and purchase the heifers; (5) in purchasing the heifers, Bender may have reasonably relied on the auctioneer's representation that the heifers were not pregnant; and (6) as the result of the purchase induced by Ericson's misrepresentation, Bender was damaged. Whether Ericson's representation of the heifers' condition was made recklessly under the circumstances and whether Bender reasonably relied on Ericson's representation were jury questions.

On the record presented, Bender was entitled to have the questions about Ericson's warranty and misrepresentation of a material fact submitted to the jury. The district court's directing a verdict on those questions is reversible error. Consequently, the district court's judgment is reversed, and this matter is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.