_____

Nos. 95-1251/1288
_____

In re: Rine & Rine Auctioneers,  *
Inc.,  *
 *
    Debtor  *
 *
_____  *
 *
Natkin & Company,  *
 * Appeals from the United States
    Appellee/Cross-appellant,  * District Court for the
 * District of Nebraska
    v.  *
 *
Richard D. Myers, Trustee of  *
The Bankruptcy Estate of Rine &  *
Rine Auctioneers, Inc.,  *
 *
    Appellant/Cross-appellee.  *

_____

Submitted:  September 13, 1995

Filed:  January 22, 1996
_____

Before McMILLIAN, HEANEY and MURPHY, Circuit Judges.
_____

McMILLIAN, Circuit Judge.

Richard D. Myers (Trustee), trustee of the bankruptcy estate of Rine & Rine Auctioneers, Inc. (Debtor), appeals from an order entered in the United States District Court for the District of Nebraska, affirming the judgment of the bankruptcy court in favor of Natkin & Company (Natkin) in an adversary proceeding brought by Natkin, seeking to recover $32,680.00 in proceeds from an auction sale conducted by Debtor on behalf of Natkin. Natkin & Co. v. Myers (In re Rine & Rine Auctioneers, Inc.), No. 8:94cv352 (D. Neb. Dec. 20, 1994), aff'g No. BK92-80770/A92-8149 (Bankr. D. Neb.

Apr. 20, 1994).  For reversal, the Trustee argues that the bankruptcy court erred in holding that the auction proceeds were held by Debtor as an agent for its principal, Natkin, and therefore the funds were not property of Debtor's estate.  Natkin cross-appeals, arguing that the bankruptcy court erred in granting prejudgment interest at the rate earned by the Trustee, rather than the statutory rate of 12%.  For the reasons discussed below, we reverse the order of the district court with respect to the issue raised in the Trustee's appeal, dismiss Natkin's cross-appeal as moot, and remand the case to the district court with instructions.

On this day, we have simultaneously filed an opinion in an appeal from another adversary proceeding arising out of Debtor's bankruptcy filing, involving a customer unrelated to Natkin.  Rine & Rine Auctioneers, Inc. v. Douglas County Bank & Trust Co. (In re Rine & Rine Auctioneers, Inc.), No. 95-1158 (Jan. 22, 1996) (DCB&T).

## Background

The underlying facts are summarized as follows.  Debtor was a corporation in the business of auctioning personal property for its customers.  Natkin employed the services of Debtor to conduct an auction sale to dispose of certain personal property (sheet metal machinery and equipment) owned by Natkin.  Debtor and Natkin entered into a written agreement whereby Natkin agreed to make the property available to Debtor, and Debtor agreed to advertise and conduct the sale, collect the proceeds, and remit the net proceeds to Natkin within ten days after the sale.

Debtor advertised and conducted the auction sale as agreed. The sale took place on March 25, 1992.  Debtor deposited the proceeds from the sale in an account at the First National Bank of Omaha (hereinafter the First National account) which Debtor had specifically created for the purpose of holding auction proceeds.

The net proceeds from the Natkin auction sale were not remitted to Natkin within ten days after the sale.

On April 27, 1992, Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code. At that time, the First National account held the proceeds from the Natkin sale as well as proceeds from other auction sales. Since the date on which the proceeds from the Natkin sale were deposited in the First National account, the balance had remained above the full amount of net proceeds from that sale, which, according to the bankruptcy court's findings, was $32,680.00. The balance in the First National account on the date of Debtor's bankruptcy filing was $45,403.00.[1]

Natkin filed an adversary proceeding in the bankruptcy court, requesting an order from that court directing the Trustee to remit the proceeds from the Natkin sale, plus interest. The Trustee opposed Natkin's request. The bankruptcy court held a hearing on Natkin's adversary complaint on February 8, 1994, and rendered its decision in a memorandum order dated April 20, 1994. The bankruptcy court stated that the relationship between an auctioneer and its customer is that of an agent and principal. Slip op. at 2 (quoting Edwin Bender & Sons v. Ericson Livestock Comm'n Co., 421 N.W.2d 766, 770-71 (Neb. 1988) (Bender & Sons) ("An auctioneer, in selling property for another at auction, is the agent of the seller, and [the auctioneer's] rights and liabilities, in the absence of an applicable statute changing them, are governed by the general principals of the law of agency.")). The bankruptcy court further noted that, as a general rule, an agency relationship ends when the purpose of the relationship has been achieved. Slip op. at 2. Because the purpose of the relationship between Debtor and Natkin would not be achieved until the auction proceeds were

---

[1]The bankruptcy court found that the maximum amount of funds necessary to pay all of the auction customers whose auction proceeds had been deposited in the First National account was $51,765.00. Slip op. at 2.

remitted to Natkin, the bankruptcy court reasoned, the agency relationship still existed at the time Debtor filed for bankruptcy, notwithstanding the fact that Debtor had breached its duty under the agreement to remit the auction proceeds within ten days. Id. at 2-3. Thus, the bankruptcy court entered judgment for Natkin, ordering the Trustee to turn over $32,680.00 plus a proportionate share of the interest earned by the Trustee since taking possession of the funds. Id. at 3-4.

The Trustee appealed the bankruptcy court's ruling to the district court. Natkin cross-appealed, claiming that the bankruptcy court erred in failing to order payment of interest at the rate of 12% under Neb. Rev. Stat. § 45-104, for the period beginning on the date the auction proceeds were due, April 4, 1992. Upon review, the district court affirmed the bankruptcy court's decision in all respects. This appeal and cross-appeal followed.

**Discussion**

When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error. Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir. 1987). As the second court of appellate review, we conduct an independent review of the bankruptcy court's judgment, applying the same standards of review as the district court. Id. State law controls questions concerning the nature and extent of the debtor's interest in property. N.S. Garrott & Sons v. Union Planters Nat'l Bank (In re N.S. Garrott & Sons), 772 F.2d 462, 466 (8th Cir. 1985) (Garrott). Therefore, in the present case, Nebraska law governs the question of whether an agency relationship existed between Debtor and Natkin at the time Debtor filed its petition. The controlling legal issue in the present case is whether the bankruptcy court erred in holding that the proceeds from the Natkin auction were not property of Debtor's estate.

-4-

First, however, we must review de novo the bankruptcy court's holding that, under Nebraska law, the relationship between Debtor and Natkin was that of agent and principal at the time Debtor filed for bankruptcy.  See DCB&T, slip op. at 5-6 & n.3 (once we examine the debtor's interest in the subject property under state law, federal bankruptcy law determines the extent to which the subject property is property of the debtor's estate) (citing Garrott, 772 F.2d at 466).

As noted above, the bankruptcy court assumed that, under Bender & Sons, the relationship between Debtor and Natkin would remain that of agent and principal until such time as Debtor were to remit the auction proceeds to Natkin.  The Trustee maintains that Bender & Sons is inapplicable to the present case.  Relying instead upon Wright & Souza, Inc. v. DM Properties, 510 N.W.2d 413 (Neb. Ct. App. 1993) (Wright & Souza), the Trustee maintains that the no agency relationship existed between Debtor and Natkin. Furthermore, the Trustee argues, even if an agency relationship had existed at the time of the auction sale under Bender & Sons, that relationship terminated upon conclusion of the sale and thereafter became a debtor-creditor relationship.

Natkin's response to the Trustee's arguments essentially follows the reasoning of the bankruptcy court.  Natkin argues that Bender & Sons is controlling because it stands for the general proposition that an auctioneer acts as the agent for its customers. Natkin argues that the appropriate measure for determining when such an agency relationship ends is the contract itself.  Thus, because the written agreement between Debtor and Natkin provided that Debtor was obligated to remit the proceeds to Natkin, the agent-principal relationship continued as long as the agreement creating that relationship remained in effect, in other words, until payment occurred.  Because Debtor never paid Natkin, Natkin argues, the auction proceeds never became part of the bankruptcy estate.  Natkin also maintains that its net auction proceeds were

properly traced to the First National account. Natkin claims that its monetary interest was never compromised because the balance in the First National account remained at or above the full amount of its net proceeds. Brief for Appellee at 11 (citing <u>Cessna Finance Corp. v. Millard Aviation, Inc. (In re Turner)</u>, 13 B.R. 15, 22 (Bankr. D. Neb. 1981)).[2]

We agree with the Trustee that <u>Bender & Sons</u> is not dispositive in the present case. In <u>Bender & Sons</u>, the Nebraska Supreme Court noted generally that an auctioneer, in selling

---

[2]Because we hold that the net proceeds from the Natkin auction were part of the estate, we need not reach the issue of whether the proceeds were properly traced to the First National account. However, to clarify the issue, we note that the bankruptcy court did not make a specific finding that the funds were properly traced. Moreover, <u>Cessna Finance Corp. v. Millard Aviation, Inc. (In re Turner)</u>, 13 B.R. 15, 22 (Bankr. D. Neb. 1981) (<u>Turner</u>), cited by Natkin, Brief for Appellee at 4, 11, does not conclusively establish the traceability of the disputed funds in the present case. In <u>Turner</u>, the bankruptcy court stated the well-settled rule that

> [w]here a secured party's cash proceeds are commingled in a general bank account, the secured party has successfully identified the proceeds by tracing them into the account or accounts into which the deposit was made. . . . At that point, a presumption arises that general payments are first made from general funds and that the security interest is only eroded as the balance in the account drops below the amount of proceeds deposited.

13 B.R. at 22 (citations omitted). The above-stated rule refers to the relationship between a secured creditor and general creditors vis-a-vis the funds in a debtor's general bank account. The rule does not apply under the facts of the present case because Natkin did not have a secured interest in funds in the First National account, nor is there any evidence to suggest that its interest was somehow superior to the interests of other customers for whom Debtor deposited auction proceeds in that account. Rather, Natkin's claim was presumably on equal footing with other potential claims. Thus, in light of the bankruptcy court's implicit finding that the funds in the First National account were insufficient to satisfy all potential claims, slip op. at 2, Natkin's tracing argument is not supported by the facts or the law.

-6-

property for another at an auction, acts as the agent for its customer, and therefore the auctioneer's rights and liabilities arising out of the auction sale are governed by the general principles of agency law. 421 N.W.2d at 770-71. The question of law regarding the relationship between an auctioneer and its customer arose because the auctioneer in Bender & Sons had made a materially false statement regarding auctioned property and was being sued by an auction bidder for misrepresentation. The Nebraska Supreme Court held that the auctioneer's statements regarding the attributes of the auctioned property were made as an agent for its principal (i.e., the customer) and therefore the potential liability of the auctioneer depended on whether the misrepresentation had been authorized by the customer. Id. at 771-72. Thus, the holding in Bender & Sons is limited to its context: an auctioneer ordinarily acts as the agent for its customer in making representations regarding the customer's assets before or during the sale of those assets. So limited, the holding in Bender & Sons is inapplicable to the facts of the present case. See DCB&T, slip op. at 8.

Wright & Souza, on the other hand, although factually not on point, is more instructive in its statement of the applicable law. In Wright & Souza, a loan broker sued a prospective borrower for anticipatory breach of contract and prevailed before a jury. 510 N.W.2d at 415-16. On appeal, the borrower argued that the trial court erred in failing to give a jury instruction regarding the loan broker's alleged duties as the borrower's agent. The Nebraska Court of Appeals held that no error had occurred because the borrower had failed to establish the existence of an agency relationship. Id. at 417. In reaching its decision, the Nebraska appellate court identified several factors to be considered in determining whether an agency relationship exists: (1) the extent of control the alleged principal exercises over the details of the alleged agent's work; (2) whether the work is done with or without the supervision of the alleged principal; (3) whether payment is by

the hour or by the job; (4) whether the work performed by the alleged agent is part of the regular business of the alleged principal; (5) whether the alleged principal is in the type of business performed by the alleged agent; and (6) whether the alleged agent is engaged in a distinct occupation or business. Id. In applying the above factors to the facts of the case before it, the Nebraska Court of Appeals held that no agency relationship existed because the borrower exercised no control over the loan broker; the loan broker was engaged in a distinct occupation which was usually done without supervision; the method of payment was not based on an hourly rate; and the services performed by the loan broker were not a regular part of the borrower's business. Id.

Likewise, in the case before us, application of the Wright & Souza factors indicates that Debtor was not Natkin's agent once the auction proceeds were deposited in the First National account. Debtor was engaging in a distinct occupation, unsupervised by Natkin and entirely independent of Natkin's business. The method of payment was not based on an hourly rate but was determined by the extent to which Debtor successfully performed its services. While it is true that the auction proceeds were segregated from Debtor's general funds (by contrast to the facts in DCB&T), they were nevertheless deposited in an account where they were intermingled with the funds of other auction customers and lacked any indicia of Natkin's ownership. We therefore hold that the bankruptcy court erred in concluding that, at the time Debtor filed for relief in bankruptcy, the net proceeds from the Natkin auction sale were held by Debtor as Natkin's agent under Nebraska law.

Having determined that the bankruptcy court erred in holding that, under Nebraska law, Debtor acted as Natkin's agent at the time Debtor filed its bankruptcy petition, we consider the alternative theories advanced by Natkin to support its claim that the auction proceeds were nevertheless not property of the estate. Natkin maintains that Debtor never acquired any legal or equitable

interest in the auction proceeds because they were held by Debtor in an express trust for Natkin. In support of this express trust theory, Natkin states that evidence presented to the bankruptcy court showed that Natkin and Debtor entered into an oral agreement prior to signing the written contract and, in that oral agreement, Debtor agreed to segregate Natkin's auction proceeds. Thus, Natkin argues, the oral and written agreements together established an express trust. Alternatively, Natkin maintains that the auction proceeds were not property of Debtor's estate because they were held by Debtor in a constructive trust for Natkin. In support of this constructive trust theory, Natkin relies on two related decisions of the bankruptcy court for the Southern District of New York, Dolph Clothiers, Inc. v. Salomon (In re Martin Fein & Co.), 34 B.R. 333 (Bankr. S.D.N.Y. 1983) (Fein I), and Varon v. Salomon (In re Martin Fein & Co.), 43 B.R. 623 (Bankr. S.D.N.Y. 1984) (Fein II).

We reject Natkin's express trust theory because, based upon the bankruptcy court's findings, there is no basis to conclude that the parties manifested an intent to create such a trust. See Rankin v. City National Bank of Crete, 153 N.W.2d 869, 871 (Neb. 1967) ("[i]n order to create a trust, it must clearly appear that such was the intention of the parties"). Nor do we find it necessary or appropriate for the bankruptcy court to make any further findings on this issue on remand. The bankruptcy court's determination that "the trustee had at least a colorable argument that the funds held in the account on the petition date were property of the estate and were not property of Natkin," slip op. at 3, logically precludes the possibility that the bankruptcy court could also have found that it "clearly appeared" that the parties intended to create an express trust.

We also reject Natkin's constructive trust theory because, as explained above, Natkin and Debtor were not in an agency relationship; therefore, Natkin cannot establish any equitable

-9-

basis for imposing a constructive trust in the present case.  See Balfany v. Balfany, 476 N.W.2d 681, 684 (Neb. 1991) (to establish a constructive trust, the court must find by clear and convincing evidence that legal title was obtained by fraud, misrepresentation, or an abuse of an influential or confidential relationship, and that, under the circumstances, the party holding legal title is not equitably entitled to hold and enjoy the property) (quoting In re Estate of Lienemann, 222 Neb. 169, 177, 382 N.W.2d 595, 601 (1986)).  Moreover, while we certainly are not bound by Fein I and Fein II, we note that our holding today is not inconsistent with those decisions.  In Fein I, the bankruptcy court held that, under New York law, the debtor-auctioneer acted as agent for its auction customers at all relevant times and thus auction proceeds that were segregated and traceable could not be included in the debtor's estate.  34 B.R. at 337.  The bankruptcy court therefore held that funds physically segregated by the debtor in envelopes marked with its customers' names were not part of the estate.  Id. at 335, 337.  Fein I is distinguishable from the present case for several reasons; not only were the customers' funds physically segregated by the debtor, they were recovered by the trustee in the original form of cash and checks received by the debtor from the auction bidders.  Id. at 335.  In Fein II, the bankruptcy court further held that proceeds from an unrelated auction sale, which were deposited in the debtor's general corporate account, also were not part of the auctioneer's bankruptcy estate.  Fein II, although factually more similar to the present case, is also distinguishable in several important respects.  Fein II was premised upon the state law determination that the debtor-auctioneer was the agent for its auction customers at all relevant times.  Thus, the bankruptcy court held that, as a result of the agency relationship, auction proceeds were held in a constructive trust by the debtor for its customers and, when the debtor commingled a customer's funds with its own money, the commingling was wrongful.  Therefore, the auction customer, as the beneficiary of the constructive trust, had an equitable lien or charge upon the entire account in which the

-10-

trust res had been wrongfully deposited.  43 B.R. at 626-28.  By contrast, in the present case, Debtor was not Natkin's agent under Nebraska law at the time Debtor filed for bankruptcy.  Therefore, no constructive trust was implied by the relationship.  See DCB&T, slip op. at 14 n.5.

## Conclusion

In sum, we hold that the bankruptcy court erred in concluding that, under Nebraska law, an agency relationship existed between Debtor and Natkin at the time Debtor filed its bankruptcy petition. We further hold that Natkin failed to establish any legal basis for its claim that the funds in dispute were not property of the bankruptcy estate at the time of Debtor's filing.  The order of the district court affirming the judgment of the bankruptcy court is therefore reversed and Natkin's cross-appeal is dismissed as moot. The case is remanded to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.