■ SIDNEY DULMAN, Doing Business as BAKERS MACHINERY COMPANY, Appellant, v MARTIN FEIN & Co., INC., Respondent.—In an action to recover damages arising out of an auction sale, the plaintiff appeals from an order of the Supreme Court, Westchester County, entered August 11, 1978, which granted summary judgment to the defendant. Order modified, on the law, by adding the following at the end of the provision granting summary judgment to the defendant, "except as to the second cause of action". As so modified, order affirmed, without costs or disbursements. Special Term, treating the defendant's CPLR 3211 (subd [a]) motion as one for summary judgment, dismissed the complaint. The dismissal is improper insofar as the complaint states a cause of action and the record creates doubt about the existence of a triable issue of fact (see *Gendelman Rigging & Trucking v Koeppel,* 29 AD2d 540). In his first cause of action, the plaintiff alleges that he attended an auction conducted by the defendant and bid $25,000 for Lot No. 73. The auctioneer, however, improperly reopened bidding after knocking the item down. In his second cause of action, the plaintiff alleges that he successfully bid on several items at the auction and paid for them, but the defendant refused to turn certain items over to him until all of the items

purchased were paid for. Neither cause of action is good against the defendant if the defendant fully disclosed its principals. The record shows that the defendant's principals were at least partially disclosed since both the newspaper advertisement announcing the auction and the copy of the "terms of sale" handed out to bidders at the sale stated that this was to be an assignee's and security agreement sale. Neither the advertisement nor the printed terms of sale given to the bidders names the assignee and secured party. However, the defendant contends that the plaintiff, along with the other bidders at the auction, had read to them another copy of the terms of sale identifying the principals by name. The plaintiff denies that anyone "on behalf of the Defendant stated that the Sale was on behalf of Lawrence Sarf as Assignee, or the Small Business Administration as Secured Party." Since the plaintiff does not specifically deny that he knew who the principals were, his carefully framed denial sounds like a negative pregnant. However, the fact remains that the defendant does not allege that it notified the bidders of its principals' identities except orally at the auction. Therefore, there is, arguably, a triable question of fact on this issue. The question remains: Has the plaintiff stated a cause of action? The plaintiff's first cause of action relies upon a narrow reading of subdivision (2) of section 2-328 of the Uniform Commercial Code, which says in pertinent part: "A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner." On the other hand, the defendant relies on paragraph 12 of the terms of sale which provides: "This sale is subject to the confirmation of the Assignee or Attorney and the Secured Party." If section 2-328 mandates completion of an auction sale by the fall of the hammer and precludes the imposition of a term or condition like the one stated in paragraph 12 of the terms of sale, then a cause of action may exist. We hold that the condition of sale imposed by paragraph 12 is fair and reasonable and is not precluded by section 2-328. *City of New York v Union News Co.* (222 NY 263, 265) concerned the auction sale of a permit by New York City. In the terms of sale, which were orally made known to the bidders, the Commissioner of Docks reserved the right to " 'Reject any or all bids if in his judgment he deemed it for the best interests of the city of New York so to do' ". The court said (p 270): "The fall of the auctioneer's hammer did not do away with the condition reserved in the terms of sale. His authority was measured by the terms of sale signed by the commissioner. The commissioner of docks had authority to impose reasonable conditions upon the sale. (Dillon Municipal Corporations [5th ed.], § 995.) When the bids were closed the defendant's bid or offer was accepted, subject, however, to the exercise by the commissioner of his personal judgment whether the best interests of the city required that he reject the defendant's bid. So far as *Brown v. City of New York* (57 Misc. Rep. 433) holds to the contrary it is disapproved." The case is not controlling since it involves neither a private sale of goods nor the construction of subdivision 2 of section 102 of the Personal Property Law, the predecessor of subdivision (2) of section 2-328 of the Uniform Commercial Code. But it does show that the concept of conditioning an auction sale on the approval of the auctioneer's principal is not foreign to this State and that the fall of the hammer need not always complete a sale. Some courts outside this State have applied these principles in Uniform Commercial Code cases albeit with varying degrees of enthusiasm (see, for example, *Bradshaw v Thompson,* 454 F2d 75, 80; *Coleman v Duncan,* 540 SW2d 935 [Mo]). The deciding factor in the instant case is our determination that the Uniform Commercial Code mandates a broad reading of subdivision (2) of section 2-328. The code is not

designed to fetter businessmen with artificial formalities and legal restrictions but to allow them to arrange their own affairs among themselves within the bounds of reason and fair play. Paragraph (b) of subdivision (2) of section 1-102 of the code specifically provides that one of the code's underlying purposes and policies is: "to permit the continued expansion of commercial practices through custom, usage and agreement of the parties". To read section 2-328 as precluding the imposition of fair and reasonable conditions on the auction sale of goods to merchants would fly in the face of one of the code's most important policies. The plaintiff's second cause of action may be viable, assuming, of course, that the defendant's principals were not fully disclosed at the time of the sale. Subdivision (1) of section 2-328 of the Uniform Commercial Code says that: "In a sale by auction if goods are put up in lots each lot is the subject of a separate sale." Section 2-307 further provides: "Unless otherwise agreed all goods called for by a contract for sale must be tendered in a single delivery and payment is due only on such tender but where the circumstances give either party the right to make or demand delivery in lots the price if it can be apportioned may be demanded for each lot." Read together, these sections indicate that the code makes the assumption that in the normal course, each lot sold at auction is to be tendered and paid for separately. The focus of section 2-307 is actually not on a situation like the one at bar but rather on the regulation of the tendering and acceptance or rejection of goods so that, for example, a seller who sells in separate lots may tender Lot "A" separately and the buyer may not reject the tender of Lot "A" because the seller has not tendered Lots "B" and "C" simultaneously. While the focus of section 2-307 may lie elsewhere, there is no reason to reject its underlying assumption in the case at bar. The instant sale was by lot and nothing in the code or any other law known to this court gives an auctioneer the right to condition the delivery of one lot on payment for all lots purchased at a sale made in the ordinary course of business. Moreover, we do not read any of the written terms of sale as expressly reserving such a right to the auctioneer. It may well be that such a withholding of goods is customary in the trade or that the defendant informed the plaintiff of this condition at the auction, as it contends. But the record itself proves neither of these things and the plaintiff denies that a statement was made before, during, or after the sale, that "all lots would have to be paid for in full by each bidder before any single lot could be removed." There is, accordingly, a second issue of fact to be tried. Since further proceedings are contemplated in this matter, one more issue deserves comment here. The plaintiff cites the case of *Meyer v Redmond* (205 NY 478). There, the plaintiff purchased securities from the defendant at an auction and tendered a down payment of 10% of the purchase price. The plaintiff was given a memorandum of sale. When the balance due was tendered the next day the defendants failed to deliver the certificates of stock. At trial, the court refused to admit evidence that the defendants told the plaintiff that the stock was being sold on behalf of a named principal and not by the defendants themselves. In upholding the trial court, the Court of Appeals, quoting from an earlier case, said (p 483): "At this day the law must be considered as settled, that a vendor or purchaser dealing in his own name, without disclosing the name of his principal, is personally bound by his contract, and it makes no difference that he is known to the other party to be an auctioneer, or broker, who is usually employed in selling property as the agent for others. *Even where he discloses the name of his principal, if he signs a written contract in his own name merely, which contract does not upon its face show that he was acting*

*as the agent of another, or in an official capacity in behalf of the government, he will be personally· bound thereby."* (Emphasis in original.) This application of the parol evidence rule seems harsh by modern standards and has long since been abandoned, at least in the First Department (cf. *Shoenthal v Bernstein,* 276 App Div 200). The Court of Appeals, however, has never expressly overruled *Meyer. Meyer* may, however, be distinguished from the instant case. Among other things, *Meyer* involved the sale of securities while this matter concerns the sale of goods. In any event, we hold that *Meyer* has been superseded by the Uniform Commercial Code and no longer states the law of New York as it applies to the sale of goods. The bill of sale introduced as a "written contract" in this case, even when read together with the written terms of sale given to the plaintiff, cannot be deemed an integration intended as a final expression of the parties' agreement within the meaning of section 2-202 of the Uniform Commercial Code, much less a "complete and exclusive statement of the terms." There is therefore nothing to prevent the introduction of parol evidence to show that the plaintiff knew who the defendant's principals were at the time of sale. Titone, J. P., Shapiro, Cohalan and Margett, JJ., concur.