**Philip G. CUBA, Individually and as Agent for the Partnership of Philip G. Cuba, Elida Baverman, Jack Strama, and Clifford J. Steele, Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION, Defendant.**

**No. 1:92–cv–1885–RHH.**

United States District Court, N.D. Georgia, Atlanta Division.

March 29, 1994.

Charles Douglas Mays, Alan Jerold Baverman, Atlanta, GA, for plaintiff.

Thomas G. Sampson, Jeffrey Emery Tompkins, R. Wayne Bond, Christopher Wade Derrick, Parker Johnson Cook & Dunlevie, Atlanta, GA, for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the Court on Defendant's Motion for Summary Judgment [20] and Defendant's Motion for Leave to File Supplemental Affidavit and Certified Pleadings in Support of Motion for Summary Judgment [21]. The Court GRANTS Defendant's Motion for Summary Judgment and GRANTS Defendant's Motion for Leave to File Supplemental Affidavit and Certified Pleadings.

## BACKGROUND

Plaintiff brought this suit against Defendant claiming that Defendant failed to perform on a contract to sell to Plaintiff approximately 4¾ acres of unimproved land located on East Belle Isle Road at Roswell Road in Fulton County, Georgia ("the Property"). Plaintiff contends that the Property was offered for sale at an auction, that it made the highest bid on the Property at the auction, and that the auctioneer brought down his hammer, thereby entering Defendant into a contract with Plaintiff to sell the Property to Plaintiff. Plaintiff requests the Court to require that Defendant specifically perform the contract, or, in the alternative, that Defendant pay Plaintiff damages.

## DISCUSSION

I. Defendant's Motion for Summary Judgment.

A. *Standard of Review for Summary Judgment Motions.*

This Court will entertain summary judgment motions "after adequate time for discovery and upon motion," *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), and will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a general proposition, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)). However, the nature of the movant's responsibility varies depending on which party would bear at trial the burden of proof on the issue in question.

Where the legal issue as to which the facts in question pertain is one on which the non-movant would bear the burden of proof at trial, the movant must demonstrate that the non-movant lacks evidence to support an essential element of his or her claim on that issue. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–16 & n. 2 (11th Cir.1993). The movant need not support its motion with evidence *negating* the non-movant's claim; it "'simply may show[ ] —that is, point[ ] out to the district court—that there is an absence of evidence to support the non-moving party's case.'" *Id.* at 1115–1116 (quoting *United States v. Four Parcels of Real Property,* 941

F.2d 1428, 1438 (11th Cir.1991)).[1] "'Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.'" *Id.* at 1116 (quoting *Four Parcels,* 941 F.2d at 1438).

Where the *movant* would bear the burden of proof at trial, it must demonstrate the absence of an issue of material fact with regard to every element essential to its claim on the legal issue in question. *Id.* at 1115. The movant in this position "'must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (quoting *Four Parcels,* 941 F.2d at 1438).

Only after the movant meets its initial burden does any obligation on the part of the non-movant arise. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970); *Fitzpatrick,* 2 F.3d at 1116. Where the movant would bear the burden of proof at trial, the non-movant must present "evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact." *Fitzpatrick,* 2 F.3d at 1116. The movant is then entitled to summary judgement only if, based on the combined evidence presented by the two parties, no reasonable jury could find for the non-movant. *Id.*

Where the non-movant would bear the burden of proof at trial, the manner in which the non-movant may rebut the movant's initial showing depends on the way in which the movant met its initial burden. If the movant put on evidence affirmatively negating the material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Id.* If the movant instead demonstrated an absence of evidence on the issue, the non-movant may respond in either of two ways:

> First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

*Id.* at 1116–17.

All evidence and factual inferences should be viewed in the light most favorable to the non-movant. *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987); *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1529 (11th Cir. 1987). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the non-movant's case. *Id.* at 248, 106 S.Ct. at 2510.

### B. *Application.*

■ Defendant contends that it never "accepted" Plaintiff's bid on the Property, so no enforceable contract exists between the parties. Defendant argues that this is so because it offered the Property for sale while reserving the right to reject the highest bid, and in fact did reject Plaintiff's high bid.

---

1. This showing requires more than a simple statement that the non-moving party cannot meet its burden at trial. *Four Parcels,* 941 F.2d at 1438 n. 19. "Instead, the moving party must point to specific portions of the record in order to demonstrate that the non-moving party cannot meet its burden of proof at trial." *Id. Accord Fitzpatrick,* 2 F.3d at 1116 n. 2 (stating that the Eleventh Circuit, in *Four Parcels,* largely resolved any confusion over "the nature of the showing required when the movant seeks to discharge [its] initial responsibility" by pointing out an absence of evidence).

■ In the context of an auction, a potential purchaser makes an "offer" to purchase an item by "bidding" on that item. *Rountree v. Todd*, 210 Ga. 226, 229, 78 S.E.2d 499 (1953); *Auctions and Auctioneers*, 7 Am. Jur.2d § 16, p. 375 (1980). In auctions where the seller does *not* reserve the right to reject a high bid or reserve the right to impose some added condition on a sale (such an auction is known as an auction "without reserve" or as an "absolute" auction), the seller's "acceptance" of the offer is signaled generally by the fall of the auctioneer's hammer. *Rountree*, 210 Ga. at 229, 78 S.E.2d 499; 7 Am.Jur.2d § 16, p. 375. The fall of the auctioneer's hammer is often referred to as "dropping the hammer" or "knocking down the property." When a seller does reserve one of the rights referred to above, the item being auctioned is done so "with reserve," and the point at which the seller legally "accepts" the potential purchaser's bid (thus entering into a contract of sale with the bidder) is less clear.

■ The parties to this suit contest two aspects of the auction at which Plaintiff alleges it entered into a contract with Defendant to purchase the Property. First, Plaintiff contends that the Property was not auctioned with reserve. The Restatement (Second) of Contracts instructs that "[u]nless a contrary intention is manifested, bids at an auction embody terms made known by advertisement, posting or other publication of which bidders are or should be aware, as modified by any announcement made by the auctioneer when the goods are put up." Restatement (Second) of Contracts, § 28(2) (1981). The evidence before the Court demonstrates that there is no genuine issue as to the Property having been auctioned with reserve.

In response to Defendant's First Requests for Admissions, Plaintiff admitted that the terms governing the auction were described in Defendant's brochure entitled "Auction— 44 Retail, Commercial & Investment Properties, Friday, April 17, 1992, 11:00 A.M., Atlanta, Georgia, sale site: The Ramada Hotel Dunwoody, 1850 Cotillion Drive." ("the Brochure"), that the Property was scheduled to be sold at the auction "with reserve," and that the auctioneer did not announce that the

sale was "absolute." Defendant's First Requests for Admissions, ¶¶ 7, 13, 16, 23 (appended to Defendant's Motion for Summary Judgment); Plaintiff's Responses to Requests for Admission, ¶¶ 13, 16, 23 (appended to Defendant's Motion for Summary Judgment). The Brochure described in detail approximately 44 available properties and stated, in its Information & Terms section, that "Properties not identified in this brochure as being sold 'Absolute' are being sold 'With Reserve.' For properties sold 'With Reserve,' the highest bid is subject to the approval of the seller." Brochure, p. 11 (appended to Defendant's Motion for Summary Judgment). The Property was not identified as being sold "absolute." *Id.* at p. 8.

■ Plaintiff argues that one of the auctioneers, Asa Marshall, essentially retracted the Property's "with reserve" status when he announced at the auction:

> Those properties that are not absolute, I can assure you, you're not here wasting your time. We have officials from RTC from all over the country here. The only thing they want to make sure of is that *they do have active bidding on those properties that are not absolute* and if they do, then they are going to sell them. I can assure you of that.

Video A (video tape of the auction, appended to Affidavit of Edwin H. Bishop as Exhibit A, appended to Defendant's Motion for Summary Judgment) counter no. 0232; Affidavit of Clifford J. Steele (appended to Plaintiff's Response to Defendant's Motion for Summary Judgment at Exhibit A), Appendix I (transcription of Marshall's statement prior to the start of the auction). *See also* Brochure, p. 11 ("Buyer's Note" stating "All announcements made at the auction take precedence over all other advertising."). However, after Marshall made this statement, he introduced a fellow employee, John Dixon, and told the audience that Dixon's comments were "*the most important part of the opening announcement.*" Video A, counter no. 0437. Dixon then referred the auction audience to the terms of the auction set forth inside the back cover of the Brochure and stated, "[w]e will abide by those terms." *Id.* at counter no. 0563; Bishop Affidavit, ¶ 14. As recount-

ed above, those terms instruct that "[p]roperties not identified in [the] brochure as being sold "Absolute" are being sold "With Reserve." Brochure, p. 11. Thus, the terms found in the Brochure and the final and "most important" verbal announcement by the auctioneers both indicate that the Property in question was presented for sale "with reserve."

The second aspect which the parties contest is whether Defendant legally "accepted" Plaintiff's bid on the Property when the auctioneer's hammer fell. Plaintiff contends that even if the Property was presented for sale with reserve, Defendant accepted his offer when the auctioneer's hammer dropped. The Court has not found any Georgia law which states explicitly whether a seller of real property, being auctioned with reserve allowing the seller to reject a high bid, may reject that bid after the hammer has dropped.

■ When an item is auctioned *without* reserve, the seller may withdraw the item only if no bid is made within a reasonable time. *Dublin Livestock & Comm'n Co. v. Day*, 178 Ga.App. 50, 51, 341 S.E.2d 913 (1986). Thus, once a bid is made on an item being auctioned without reserve, the seller may not withdraw the item, even if the hammer has not yet fallen.

When a seller auctions an item *with* reserve, the seller reserves the right to refuse to accept any bid that is made. 7 Am.Jur.2d § 16, p. 375. In such a situation, a binding sale does not exist until the seller "accept[s] the bid." *Rountree*, 210 Ga. at 229, 78 S.E.2d 499. This definition raises the question: What constitutes a seller's acceptance of a bid? In the context of the instant case, the question becomes: May the seller decline to accept a bid after the fall of the hammer, or does the fall of the hammer connote an acceptance even where an item is auctioned with reserve?

Plaintiff contends that when an item is auctioned with reserve, the time at which the item may be withdrawn is contingent upon the language of the reservation. Specifically, Plaintiff argues that if the seller reserves the right to condition the "sale" or "delivery" of the item on some additional factor (i.e., on the seller's approval of the sale or approval of the delivery), then the seller may withdraw the item subsequent to the falling of the hammer. However, where the seller reserves the right to "reject any bid," Plaintiff argues that the seller may exercise that right only prior to the falling of the hammer. Once the hammer falls, Plaintiff asserts, the high bid is accepted, a contract is formed, and the reserved right is mooted.

■ The Georgia Commercial Code contains a provision which suggests that a sale by auction with reserve may be complete when the hammer falls. O.C.G.A. § 11–2–328(2) & (3) ("A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner.... In an auction with reserve the auctioneer may withdraw the goods at any time until he announces completion of the sale"). However, this provision applies only to sales of goods (as opposed to sales of real property), and some courts in other states which have adopted nearly identical language from the Uniform Commercial Code have found that the language is not to be interpreted so narrowly as to prevent a seller from conditioning the sale to his subsequent approval of the accepted bid price. *See, e.g., Dulman v. Martin Fein & Co.*, 66 A.D.2d 809, 411 N.Y.S.2d 358, 361 (N.Y.App.Div.1978). Some courts have also found that in the context of a reserved right to reject a high bid, the "customary manner" of announcing the completion of a sale is not by the fall of the hammer, but by the seller's affirmative acceptance of the bidder's offer. *See, e.g., Rosin v. First Bank of Oak Park*, 126 Ill.App.3d 230, 81 Ill.Dec. 443, 448, 466 N.E.2d 1245, 1250 (1984) ("[A]cceptance of a bid at an auction is manifested by the fall of the hammer or any other customary means. In an auction in which the seller has reserved the right to reject any and all bids, the 'customary means' of acceptance clearly is not the fall of the hammer, but rather is some other objective manifestation of acceptance.").

The editors of American Jurisprudence (Second) interpret existing case law as establishing the following proposition:

Where the seller reserves the right to refuse to accept any bid made, a binding sale is not consummated between the seller and the bidder until the seller accepts the bid. Furthermore, *where a right is reserved in the seller to reject any and all bids received, the right may be exercised by the owner even after the auctioneer has accepted a bid,* and this applies to the auction of public as well as private property."

7 Am.Jur.2d § 16, p. 375 (emphasis added). The cases cited by American Jurisprudence (Second) suggest that this proposition encompasses those instances in which the auctioneer's hammer has already fallen. *See, e.g., Eugene Stud & Veneer, Inc. v. State Board of Forestry,* 3 Or.App. 20, 469 P.2d 635, 636–37 (Or.Ct.App.1970) (citing 7 Am.Jur.2d § 16 and finding that where a seller had reserved the right "to reject any or all bids," the seller could reject the high bid six days after the auctioneer had declared that the bidder "was the high bidder."); *Continental Can Co. v. Commercial Waterway Dist.,* 56 Wash.2d 456, 347 P.2d 887, 888–89 (1959) (finding that the property owner could "exercise the reservation in the notice of sale '. . . the right to reject any and all bids received,' after the auctioneer had accepted the bid of the respondent, being the highest and best bid, and announcing that the property was 'knocked down' to the respondent."); *New York v. Union·News Co.,* 222 N.Y. 263, 269–70, 118 N.E. 635 (N.Y.1917) (finding that where a municipality-seller reserved the right for its representative to reject any and all bids if in his judgment he deemed it for the best interests of the city, that representative could reject the high bid a day later, even though the hammer had fallen).

Other courts have concurred in finding that when a seller reserves the right to reject bids, it may exercise that right even after the hammer has fallen on a high bid. *See, e.g., Rosin, supra,* 466 N.E.2d at 1250 ("[A]cceptance of a bid at an auction is manifested by the fall of the hammer or any other customary means. In an auction in which the seller

has reserved the right to reject any and all bids, the 'customary means' of acceptance clearly is not the fall of the hammer, but rather is some other objective manifestation of acceptance."); *Sly v. First Nat. Bank of Scottsboro,* 387 So.2d 198, 200 (Ala.1980) (finding that the parties had not established a contract because the defendant had presented the item for sale with reserve—thereby allowing the defendant "to withdraw the goods or to accept or reject any bid"—and was thus entitled to reject the plaintiff's high bid even after the auction was completed). In addition, this Court has found no cases in which a court (1) considered a situation in which a seller reserved the right to reject a bid, (2) explicitly distinguished the time prior to the fall of the hammer from the time subsequent to the fall of the hammer (as opposed to merely distinguishing the time before "acceptance" from the time after "acceptance"), and (3) found that the bid could not be rejected after the fall of the hammer.[2]

The Court finds that there is no genuine issue as to the Property's having been auctioned "with reserve." The Court also finds that Defendant was entitled to reject Plaintiff's high bid after the fall of the hammer, and that there is no genuine issue as to Defendant's having rejected Plaintiff's bid. Therefore, the Court GRANTS Defendant's Motion for Summary Judgment.

II. Defendant's Motion for Leave to File Supplemental Affidavit and Certified Pleadings.

The Court GRANTS Defendant's motion as unopposed.

CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment [20], and GRANTS Defendant's Motion for Leave to File Supplemental Affidavit and Certified Pleadings [21].

So ORDERED.

---

2. The turn-of-the-century Georgia cases which Plaintiff cites do not contradict this statement. In those cases, the courts do not discuss whether the items were offered for sale with or without reserve, and Georgia had not yet adopted the Uniform Commercial Code with its assumption that absent explicit terms otherwise, a sale of goods is made with reserve.